IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**LIONEL J. ALEXANDER**                                                              **PLAINTIFF**

v.                                                                       CAUSE NO. 1:11CV324-LG-RHW

**BP, PLC; BP AMERICA PRODUCTION
COMPANY; BP PRODUCTS NORTH
AMERICA, INC.; BP EXPLORATION
& PRODUCTION, INC.; TRANSOCEAN,
LTD.; TRANSOCEAN DEEPWATER, INC.;
*SYL*; PARSONS COMMERCIAL SERVICES,
INC.; and DEFENDANTS X, Y, AND Z**                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART BP'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion for Summary Judgment [46] filed by BP America Production Company, BP Exploration & Production, Inc., and BP Products North America, Inc. (hereinafter collectively referred to as "BP"), and joined by Parsons Commercial Services, Inc. BP argues that it is entitled to summary judgment as to Lionel Alexander's claims arising out of injuries he allegedly suffered while working as a hazwoper[1] following the BP / Deepwater Horizon Oil Spill. BP claims that Alexander cannot demonstrate that he was a seaman under the Jones Act or that BP was the owner or owner pro hac vice of the boat on which Alexander was allegedly injured. BP also argues that Alexander relies solely on inadmissible hearsay and unqualified lay opinion in an attempt to demonstrate that the vessel on which he was allegedly injured was not capable of

---

[1] According to the Occupational Safety and Health Administration, "hazwoper" is an acronym for Hazardous Waste Operations and Emergency Response. www.osha.gov/html/faq-hazwoper.html.

handling rough seas past Horn Island. Alexander opposes the Motion. Upon reviewing the submissions of the parties and the applicable law, the Court finds that the Motion for Summary Judgment filed by BP and joined by Parsons should be granted in part and denied in part. The Court finds that genuine issues of material fact exist regarding whether Alexander was a seaman under the Jones Act. Since an employee must be classified as a Jones Act seaman in order to receive maintenance and cure, the Court finds that Alexander's employer, Parsons, is not entitled to summary judgment as to his maintenance and cure claim. The Court further finds that both BP and Parsons are entitled to summary judgment as to Alexander's Jones Act negligence and unseaworthiness claims, as there is no evidence or expert testimony tending to show that the vessel at issue was too small to be utilized in waters past Horn Island. The Court also finds that BP is entitled to summary judgment as to the unseaworthiness, Jones Act, and maintenance and cure claims, because it was a time-charterer, it did not own the vessel at issue, and it was not Alexander's employer.

## FACTS

On June 30, 2010, Alexander was hired by Parsons, which classified him in its paperwork as a hazwoper. (BP's Mot., Ex. 4, ECF No. 46-5). However, during his deposition, Alexander testified that Parsons originally hired him to serve as a dock inspector who was not supposed to leave the dock, but he never worked as a dock inspector. (BP's Mot., Ex. 3 at 29-30, ECF No. 46-4). Parsons assigned him to work on a vessel crew as a hazwoper, scooping up tar balls and placing booms

around oil slicks in the waters south of Mississippi following the BP / Deepwater Horizon Oil Spill. (BP's Mot., Ex. 3 at 30, 45-46, ECF No. 46-4). Each day that Alexander arrived for work, a representative of Parsons would assign him to a boat. (*Id.* at 35). He went out on a boat every morning, unless the weather prevented the oil spill containment vessels from deploying. (*Id.* at 40). Alexander either went home or participated in land-based training and safety exercises on those days. (*Id.* at 39-40).

Although Alexander believes that he worked for Parsons for about three months, Parson's records reflect that he was laid off thirty-nine days after he was hired, on August 8, 2010. (*Id.* at 31, 33-34; BP's Mot., Ex. 5, ECF No. 5). During his employment Alexander worked on at least two boats, the *Aquaholic* and the *SYL*. (BP's Mot., Ex. 3 at 37-38, ECF No. 46-4). He does not know the dates on which he worked on these boats. (*Id.* at 40). While working on the *SYL*, Alexander claims that rough seas caused him to fall against an ice chest and injure his back. (*Id.* at 47, 50-51). He also claims that one of his arms was covered in oil as a result of the incident, which caused him to suffer from vomiting and skin problems. (*Id.* at 50-51). Alexander does not know the date on which he was injured. (*Id.*)

BP has produced a Master Vessel Charter Agreement reflecting that BP chartered the *SYL* for oil spill response and containment efforts as directed by BP. (BP's Mot., Ex. 1, ECF NO. 46-2). The Agreement required that the *SYL* be available at BP's disposal for operation twenty-four hours each day. (*Id.* at 1). The

*SYL*'s owner was required to provide a crew to operate the vessel. (*Id.* at 2). The Agreement provided that the charter should not be construed as a demise of the vessel, as the owner was responsible for navigation of the vessel, the acts of its pilots, crew, and "all other similar matters as if trading for its own account." (*Id.* at 6). The *SYL* is a twenty-one foot, four inch charter fishing vessel. (*Id.* at Ex. B). No documentation concerning the *Aquaholic* or any other oil spill response vessels has been provided to the Court.

Alexander filed this lawsuit against Parsons, BP, the *SYL*, Transocean Ltd., and several unnamed defendants. He has not served the *SYL* or Transocean with process. Alexander alleges a Jones Act negligence claim, a maintenance and cure claim, and a general maritime unseaworthiness claim. In support of these claims, he alleges that the *SYL* was too small for the rough seas past Horn Island. BP and Parsons seek dismissal of all of Alexander's claims.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary

judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

**I. WHETHER ALEXANDER WAS A SEAMAN UNDER THE JONES ACT**

"The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 370 (1995). To qualify as a seaman under the Jones Act, a plaintiff must demonstrate (1) that his duties "contribute to the function of the vessel or to the accomplishment of its mission" and (2) that he has a "connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* at 368. The total circumstances of the plaintiff's employment must be considered when evaluating these factors, because "the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 370. As a general rule, a worker who spends less than about thirty percent of his working time in the service of a vessel in navigation should not qualify as a seaman. *Id.* at 371.

As for the first consideration, BP claims that Alexander was not a seaman because he did not contribute to the function of the vessel, but it overlooks the

possibility that Alexander may demonstrate that he was a seaman by showing that he contributed to the vessel's mission. In this case, the vessel's mission was to remove oil from the gulf waters, and Alexander clearly contributed to this mission.

BP also claims that Alexander was not a seaman, because he served less than thirty percent of his employment on the *SYL*. It claims that Alexander only worked on the *SYL* eight days, or 20.5 percent of his employment. In support of this argument, BP has submitted 111 pages of field supervisor sheets and personnel sign-in sheets from the oil spill clean-up that are not accompanied by an affidavit verifying the completeness of the documentation or otherwise explaining the documentation. BP asserts that the paperwork shows that Alexander only worked on the *SYL* on July 9, 10, 11, 12, 14, 17, 19, and 20, 2010. BP also relies on a document reflecting that the *SYL* was taken out of service due to damage on July 21, 2010. However, it is undisputed that Alexander also worked at least two days on the *Aquaholic*, July 7 and 8, 2010. The sign-in and briefing sheets for July 2, 3, 4, 29, 30, and August 3, 2010, reflect that Alexander worked on each of those days and that vessels were deployed on those dates. BP has not provided any records concerning July 22 through July 28, 2010.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record. FED. R. CIV. P. 56(C)(1). Despite a tedious review of the records provided, the Court cannot determine whether Alexander worked on a vessel on July 2, 3, 4, 29, 30, or August 3. On July 3rd and 4th, Alexander's position was listed as "NSS" and on August

3rd, his job function was "WSO" at the site named "O'Sullivan," but the parties have not provided any evidence or affidavits that would explain this terminology to the Court. BP claims that vessels may not have been deployed on July 3rd and July 4th due to the approach of a hurricane, but the briefing sheets for these days reflect that over 100 vessels were deployed on each of these days. The Court cannot assume from the record before it that Alexander was not on a vessel on the six dates that BP has not considered.

Furthermore, there is no evidence or testimony in the record that Alexander performed any duties, aside from safety and training sessions, on land during his employment. These land-based assignments were temporary in nature and were usually caused by bad weather. Parsons' records reflect that vessels were not deployed due to weather conditions on only five days: July 1, July 5, July 6, July 16, and July 18, 2010. Alexander testified at his deposition that he never worked as a land-based dock inspector. According to the record currently before the Court, Alexander's only job was to ride on a vessel and remove oil from the gulf waters; no other job responsibilities have been described to the Court by any party.

Since Alexander worked on more than one vessel during his employment, this Court must consider whether the vessels utilized for clean-up constituted a fleet under the Jones Act. A fleet is "an identifiable group of vessels acting together or under one control." *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 890 (5th Cir. 1993). "It is well established that a large number of variously owned and controlled vessels does not constitute a fleet." *Campo v. Electro-Coal Transfer Corp.*, 970 F.2d 51, 53

(5th Cir. 1992). There is no evidence before the Court from which the Court can determine whether the oil spill clean-up vessels were controlled by the same entity or group of entities, but it appears from BP's Reply Memorandum that all of the vessels were owned by various individual parties but chartered by BP and controlled by some combination of entities, including the Coast Guard. (Def.'s Reply at 11, n.3, ECF No. 52).

As explained previously, the movant seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. Neither BP nor Parsons has met this initial burden. The sign-in sheets and vessel assignment records provided by the defendants appear to be incomplete. There is no evidence or testimony from which the Court could determine whether the vessels could be considered a fleet. If the vessels constituted a fleet and Alexander worked on at least two of the additional six days that he appeared for work, then Alexander spent more than thirty percent of his employment on a fleet of vessels. Given that Alexander testified that he never worked as a dock inspector and that he would go out on a vessel every morning that he appeared for work unless the vessels were not deployed due to weather conditions, genuine issues of material fact exist regarding whether Alexander was a seaman under the Jones Act. (*See* Def.'s Mot., Ex. 3 at 40, ECF No. 46-4; Def.'s Mot., Ex. 6, ECF No. 46-7).

## II. WHETHER ALEXANDER CAN DEMONSTRATE THAT THE DEFENDANTS WERE NEGLIGENT OR THAT THE VESSEL WAS UNSEAWORTHY

The Jones Act provides that a seaman injured in the course of employment may sue his employer for injuries caused by the employer's negligence. *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 603 (5th Cir. 2007) (citing 46 U.S.C. § 30104(a)). The basis for an employer's liability under the Jones Act is the employer's negligence; it is insufficient to demonstrate the mere fact that an injury occurred on the vessel. *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 571 (5th Cir. 2012). The employer is not the insurer of its employee's safety. *Id.*

"Unseaworthiness is a claim under general maritime law 'based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea.'" *Id.* at 570. This duty on the part of the vessel owner is a nondelegable duty. *United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki*, 358 U.S. 613, 616 (1959); *Brister v. A.W.I. Inc.*, 946 F.2d 350, 355 (5th Cir. 1991).

In support of his negligence and unseaworthiness claims, Alexander claims that the *SYL* was a small, recreational fishing boat that should not have traveled past Horn Island. He believes that the *SYL* was not the proper length, and he claims that the operator of the boat stated that it was too small to handle the swells in the Gulf of Mexico.[2] Alexander does not remember the driver's name, and he has

---

[2] At times during his deposition, Alexander incorrectly referred to the waters past, or south of, Horn Island as the Mississippi Sound, while these waters are actually considered the Gulf of Mexico.

not produced an affidavit from the driver.

The operator's alleged statement regarding the size of the boat is inadmissible hearsay. *See* Fed. R. Evid. 801, 802. Lay opinions, such as those presented by Alexander, are only admissible where: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 (which pertains to testimony by expert witnesses)." *See* Fed. R. Evid. 701, 702. The Court finds that Alexander's opinions concerning the *SYL*'s size and capability of handling rough seas are inadmissible lay opinions, because technical and other specialized knowledge is required for such an opinion. Alexander has not demonstrated that he is qualified to give opinions of this nature, particularly since his deposition testimony reveals that Alexander has primarily worked as a barber, not an expert in maritime safety. The discovery and expert designation deadlines in this case have expired, and Alexander has not presented any admissible evidence or testimony tending to demonstrate that either Parsons or BP acted negligently by utilizing an undersized vessel. As a result, both Parsons and BP are entitled to summary judgment as to the Jones Act and general maritime negligence and unseaworthiness claims asserted by Alexander.

### III. ALEXANDER'S MAINTENANCE AND CURE CLAIM

Maintenance and cure refers to the employer/vessel owner's duty to provide food, lodging, and medical services to a seaman injured while serving a ship. *Beech*,

691 F.3d at 570; *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008). This duty is owed regardless of whether the employer or shipowner was negligent. *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730 (1943); *Everett v. Atl. Sounding Co., Inc.*, 388 F. App'x 399, 401 (5th Cir. 2010). "The standard for determining seaman status for purposes of maintenance and cure is the same as that established for determining [seaman] status under the Jones Act." *Lantz v. SHRM Catering Servs., Inc.*, 14 F.3d 54 (5th Cir. Jan. 5, 1994) (quoting *Hall v. Diamond M Co.*, 732 F.2d 1246, 1248 (5th Cir. 1984). Generally, time-charterers are not liable for maintenance and cure, since they are not responsible for the navigation of the ship or the work and welfare of the crew. *Matute v. Lloyd Bermuda Lines, Ltd.*, 931 F.2d 231, 235 (3rd Cir. 1991).

> The Fifth Circuit has explained:
>
> There are three general categories of charters: the bareboat charter, the time charter, and the voyage charter. These categories are further characterized as either demise or non-demise charters: bareboat charters are demise charters; both time charters and voyage charters are non-demise charters. The distinction between the demise and non-demise charters depends on the degree of control retained by the owner of the vessel. In a demise charter, the vessel owner transfers full possession and control to the charterer, who in turn furnishes the crew and maintenance for the vessel (thus the term "bareboat") . . . .
>
> In contrast, the non-demise charter does not vest nearly the same degree of control in its charterer. A time charter only entitles the charterer to the use of the vessel for a specified time. The vessel owner retains primary possession and control. Although a time charterer does direct the destinations of the vessel, he does not control the details of vessel operation required to reach those destinations.

*Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993). A time

charterer is not liable for negligence of the vessel's crew or unseaworthiness of the vessel, but it may be liable for its own negligence. *Id.* "'[T]raditional time-charterer duties' are limited to the vessel's commercial activities, such as designating the cargo and the routes and destinations . . . ." *Id.* at 1216.

In the present case, the Court finds that BP was a time-charterer / non-demise charterer. The *SYL*'s crew was provided by its owner, which also maintained control of navigation, and BP was only permitted to utilize the vessel for a specified period of time. The Court also rejects Alexander's argument that BP was his employer, because all of the evidence before the Court shows that Alexander was hired, paid, directed, and laid off by Parsons, not BP. Furthermore, it is undisputed that BP did not own the *SYL*.

For these reasons, BP is not liable for maintenance and cure.[3] However, Alexander's employer, Parsons, has not demonstrated that it is entitled to summary judgment as to the maintenance and cure claim, because it has solely relied on BP's unpersuasive argument that Alexander could not be considered a Jones Act seaman as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court finds that BP and Parsons are entitled to summary judgment as to Alexander's Jones Act and general maritime claims of negligence and unseaworthiness. BP is also entitled to summary judgment as to

---

[3] BP's time-charterer, non-employer status is yet another justification for denying Alexander's Jones Act and unseaworthiness claims.

Alexander's maintenance and cure claim.  Only Alexander's maintenance and cure claim against Parsons remains pending.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [46] filed by BP America Production Company, BP Exploration & Production, Inc., and BP Products North American, Inc. (hereinafter collectively referred to as "BP"), and joined by Parsons Commercial Services, Inc., is **GRANTED** as to Lionel Alexander's Jones Act and general maritime claims of negligence and unseaworthiness against BP and Parsons as well as Alexander's maintenance and cure claim against BP.  The Motion is **DENIED** as to Alexander's claim against Parsons for maintenance and cure.

**SO ORDERED AND ADJUDGED** this the 16th day of November, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE